# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA


BRENT MIRONELLE LEE, INDIVIDUALLY
AND ON BEHALF OF HIS MINOR CHILDREN       CIVIL ACTION NO.
BRE'UNISTY LEE AND JAMAL LEE


VERSUS                                 17-23-SDD-EWD


SHERIFF JASON ARD, IN HIS OFFICIAL
CAPACITY AS SHERIFF OF LIVINGSTON
PARISH, SERGEANT CARLCHILDERS, AND
CONTINENTAL CASUALTY COMPANY

## RULING

This matter is before the Court on the *Motion to Dismiss*[1] by Defendants, Sheriff

Jason Ard, in his official capacity as Sheriff of Livingston Parish ("Sheriff Ard") and

Sergeant Carl Childers ("Sgt. Childers")(or collectively "Defendants").  Plaintiff, Brent Lee

("Plaintiff"), has filed an *Opposition*[2] to this motion, to which Defendants filed a *Reply*.[3]

After Plaintiff filed a *First Amended Complaint*[4] and a *Second Amended Complaint*,[5] both

Parties filed *Supplemental Memoranda*[6] in support of their positions.  For the following

reasons, the Court finds that Defendants' motion should be granted in part and denied in

part.

---

[1] Rec. Doc. No. 15.
[2] Rec. Doc. No. 18.
[3] Rec. Doc. No. 25.
[4] Rec. Doc. No. 21-1.
[5] Rec. Doc. No. 33.
[6] Rec. Doc. Nos. 29, 35, & 40.
41458

## I.  FACTUAL BACKGROUND[7]

Plaintiff alleges that, on or about January 11, 2016, he was traveling on Florida Boulevard in Denham Springs, Louisiana, when he allegedly changed lanes without using a turn signal.  For this alleged traffic violation, Sgt. Childers and other responding officers attempted to initiate a traffic stop.  Plaintiff contends that he did not immediately pull over because of his prior experiences with Livingston Parish Police officers which "led him to be extremely fearful" of what the officers might to do him if he stayed in the area.[8]  Thus, Plaintiff contends he continued driving for approximately seven minutes until he reached a neighborhood in which he felt safer.[9]

Upon entering the neighborhood, Plaintiff stopped and exited his vehicle.  Plaintiff claims that Sgt. Childers deployed a K9 Apache dog ("the dog") to assist in making the arrest.  Plaintiff contends witness accounts establish that the dog viciously attacked him for between five and seven minutes after he had surrendered to police.  Plaintiff further claims that, during this alleged attack, he was pleading with officers for relief as the dog was "chewing at his flesh."[10]  Plaintiff alleges that Sgt. Childers allowed the dog to attack Plaintiff for an unnecessary and excessive amount of time.  Further, Plaintiff alleges that the dog continued to attack him even after Sgt. Childers ordered the dog to cease.  As a result of this attack, Plaintiff alleges he has suffered severe physical injuries and the loss of quality and enjoyment of life.

Plaintiff brings the following federal claims pursuant to 42 U.S.C. § 1983 against

---

[7] The facts are drawn from the *Complaint* (Rec. Doc. No. 1), *Second Amended Complaint* (Rec. Doc. No. 33), and the Parties' memoranda.
[8] Rec. Doc. No. 1, ¶ 12.
[9] *Id.*, ¶ 13.
[10] Rec. Doc. No. 18, p. 2.
41458

Sgt. Childers in his personal and official capacities: violation of Fourth, Fifth, and Fourteenth Amendment; excessive force; improper medical transport and attention; and concealment of his whereabouts. Plaintiff further claims Sgt. Childers' conduct represents "systemic behavior based on custom, training, and policies" of the Livingston Parish Sheriff's Office.[11] Plaintiff brings the following federal claims pursuant to 42 U.S.C. § 1983 against Sheriff Ard in his official capacity: negligent training and supervision of all officers, employees, and animals; failure to enforce policies/customs regarding advising family of a detainee's whereabouts; a policy of inadequately trained police officers, staff, and animals; deliberate indifference; and *respondeat superior*.

Plaintiff brings the following state law claims against Sgt. Childers: negligent injuring; assault and battery; and intentional infliction of emotional distress ("IIED"). Plaintiff asserts the following state law claims against Sheriff Ard: negligent training and supervision and vicarious liability for the actions/conduct of Sgt. Childers.

Defendants now move to dismiss Plaintiff's lawsuit for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    LAW AND ANALYSIS

### A.  Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[12] The Court may consider "the complaint, its proper attachments, documents incorporated into

---

[11] Rec. Doc. No. 1, ¶ 23(e).

[12] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

41458

the complaint by reference, and matters of which a court may take judicial notice."[13]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[14]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[15]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[16]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[18]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[19]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[20]

---

[13] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[14] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

[15] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").

[17] *Twombly*, 550 U.S. at 570.

[18] *Iqbal*, 556 U.S. at 678.

[19] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[20] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

41458

## B.  Federal Claims under 42 U.S.C. § 1983

The Civil Rights Act of 1866, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[21] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[22]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.'"[23]

To prevail on a Section 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[24]  A Section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[25]

### 1.  Official Capacity Claims

Both Sheriff Ard and Sgt. Childers have moved to dismiss the official capacity Section 1983 claims asserted against them.  Any official capacity claims against Sgt.

---

[21] *See Migra v. Warren City School District Board of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981);

[22] 42 U.S.C. § 1983.

[23] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, TX*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818 (1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir.1985).

[24] *See Blessing v. Freestone,* 520 U.S. 329, 340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir.1984).

[25] *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir.1986).

41458

Childers must be dismissed because he is not alleged to be a policymaker for Livingston Parish.[26]

Plaintiff has alleged the following official capacity[27] Section 1983 claims against Sheriff Ard, who does not dispute that he is a policymaker for Livingston Parish:  negligent training and supervision of all officers, employees, and animals; failure to enforce policies/customs regarding advising family of a detainee's whereabouts; a policy of inadequately trained police officers, staff, and animals; deliberate indifference; and *respondeat superior.*  To the extent Plaintiff asserts a *respondeat superior* claim under Section 1983, that claim is dismissed as the law is abundantly clear that "a § 1983 claim cannot be based on the theory of *respondeat superior.*"[28]

Plaintiff makes the following allegations relating to his federal claims: Sgt. Childers' and Sheriff Ard's "actions represent systematic behavior based on custom, training, and policies of the LIVINGSTON PARISH SHERIFF'S OFFICE";[29]  the "training and supervision of all officers and employees of Defendants acting under color of state law are substandard and deficient";[30] "LIVINGSTON PARISH SHERIFF'S OFFICE has repeatedly evidenced a policy of inadequately trained police officer[s], staff, and animals under their control.  The continuous problems plaguing LIVINGSTON PARISH SHERIFF'S OFFICE made, and still do make, the need for new or different policy and training so apparent that it is reasonable to say Defendants have been indifferent to the

---

[26] *Elphage v. Gautreaux*, 969 F.Supp.2d 493, 512 (citing *Club Retro, L.L.C. v. Hilton*, No. 07–193, 2008 WL 1901723, at *7 (W.D.La. Apr. 4, 2008), *rev'd in part on other grounds*, 568 F.3d 181 (5th Cir.2009)).
[27] No claims were brought against Sheriff Ard in his individual capacity.
[28] *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.").
[29] Rec. Doc. No. 1, ¶¶ 23(e) & 24(d).
[30] *Id.* at ¶ 25.
41458

risks to the general public, as well as the need for reform";[31] and the "repeated failures by both policymakers to adequately train and supervise the employees and animals … are a direct and proximate cause of the deprivations of life suffered by Plaintiffs."[32]

Likely prompted by the filing of Defendants' *Motion to Dismiss*, Plaintiff filed an *Amended Complaint* wherein he amended Paragraph 28 to read, in part, as follows: "Though this policy may not have been officially adopted, it is a persistent, widespread practice of officials or employees, which, is so common and well settled as to constitute a custom that fairly represents municipal policy."[33]

A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent.[34] Accordingly, the claims against the Sheriff in his official capacity are, in effect, claims against the municipal entity he represents, which is Livingston Parish.[35] A plaintiff asserting a Section 1983 claim against a municipal official in his official capacity or a Section 1983 claim against a municipality "must show that the municipality has a policy or custom that caused his injury."[36] To establish an "official policy," a plaintiff must allege either of the following:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policymaking authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly

---

[31] *Id.* at ¶ 28.
[32] *Id.* at ¶ 29.
[33] Rec. Doc. No. 33 at ¶ 3 (amending ¶ 28 of original *Complaint*).
[34] *Monell v. New York City Dep't of Soc. Serv, of City of New York*, 436 U.S. 658, 691 n. 55 (1978).
[35] *Graham,* 473 U.S. at 165; *see also Bellard v. Gautreaux*, No. CIV.A. 08-627, 2010 WL 3523051, at *4 (M.D. La. Sept. 3, 2010) amended in part, No. CIV.A. 08-627, 2010 WL 4977480 (M.D. La. Dec. 2, 2010), *affirmed*, 675 F.3d 454 (5th Cir. 2012) *and affirmed*, 675 F.3d 454 (5th Cir. 2012).
[36] *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007).
41458

represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[37]

Although "a single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity,"[38] absent an official policy, actions of officers or employees of a municipality do not render the municipality liable under Section 1983.[39] A municipality cannot be held liable under Section 1983 for the tortious behavior of its employees under a theory of *respondeat superior.*[40] "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[41]

The Supreme Court has held that municipal policies and practices amounting to deliberate indifference with respect to training, supervision, and/or hiring may give rise to Section 1983 liability.[42] The Fifth Circuit has held that an official is liable under Section 1983 for a failure to train or supervise only where a plaintiff establishes that: "(1) the official failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[43] A complaint must show that, "through its deliberate conduct, the

---

[37] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984).
[38] *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996) (internal quotations and citations omitted) (emphasis in original).
[39] *Id.*
[40] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
[41] *Id.*
[42] *See City of Canton v. Harris*, 489 U.S. 378, 380, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410–11, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
[43] *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (alteration omitted) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)).
41458

municipality was the 'moving force' behind the injury alleged."[44]  To state a claim, plaintiffs "must plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation."[45]

However, the Supreme Court has expressly prohibited the application of a heightened pleading standard to Section 1983 claims against municipalities.[46]  Rather, a plaintiff need only comply with notice pleading requirements by presenting a "short and plain statement of the claims showing that the pleader is entitled to relief."[47]  Boilerplate allegations of inadequate municipal policies or customs are generally sufficient.[48]  A complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[49]

Sheriff Ard moves to dismiss the Section 1983 claims brought against him for several reasons.  First, Sheriff Ard contends Plaintiff makes only conclusory allegations that he is liable for deficient policies, yet Plaintiff has failed to specifically identify a policy or pattern of conduct for which Sherriff Ard is liable.  Further, Sheriff Ard argues that Plaintiff's inclusion of the word "repeatedly" in his allegations is insufficient to effectively plead a pattern without reference to specific repeated conduct.  With respect to deficient training, Sheriff Ard contends Plaintiff has only pled the elements of his claim without

---

[44] *Brown*, 520 U.S. at 404.

[45] *McClure v. Biesenbach*, No. 08–50854, 2009 WL 4666485, at *2 (5th Cir. Dec.9, 2008) (unpublished) (citing *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162 (5th Cir.1997)).

[46] *Jones v. Bock*, 549 U.S. 199, 212–13, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).

[47] *Id.*

[48] *See, e.g., Mack v. City of Abilene*, 461 F.3d 547, 556 (5th Cir.2006); *Ortiz v. Geo Group, Inc.*, No. 07–645, 2008 WL 219564, at *2 (W.D.Tex. Jan.25, 2008); *Jacobs v. Port Neches Police Dept.*, No. 94–767, 1996 WL 363023, at *13–15 (E.D. Tex. June 26, 1996); *DeFrancis v. Bush*, 839 F.Supp. 13, 14 (E.D.Tex.1993).

[49] *Mack*, 461 F.3d at 556 (quoting *Leatherman,* 507 U.S. at 168).

41458

underlying factual support required by law.  As to Plaintiff's contention that Sheriff Ard failed to enforce an alleged policy requiring officers to inform family members of a relative's whereabouts, Sheriff Ard maintains that Plaintiff has failed to plead any causal connection between any such alleged policy and a constitutional violation or any pattern of this kind of alleged constitutional violation.  Sheriff Ard further contends Plaintiff fails to allege any facts that would establish that Sheriff Ard knew of any policy of inadequate training or supervision or facts regarding other similar incidents that would have given Sheriff Ard notice of such a policy or custom.

Plaintiff essentially concedes his lack of specificity in pleading the allegations against Sheriff Ard:  "Without adequate discovery Plaintiff is at a severe disadvantage in having to more 'specifically identify' a pattern of conduct that can be said to represent a policy or custom."[50]  Plaintiff sought leave to amend his *Complaint* which was granted as set forth above.

As to Plaintiff's assertion that discovery is necessary to meet the specificity requirement for pleading, Sheriff Ard responds that the Supreme Court forbids such an argument and has held that, "although Rule 8 no longer requires hyper-technical pleading, 'it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'"[51]  Thus, Sheriff Ard maintains that Plaintiff cannot engage in discovery in an attempt to obtain facts that support a "currently baseless claim."[52]  The Court agrees.

The Court finds that the official capacity federal claims against Sheriff Ard must be dismissed.  Plaintiff fails to provide factual allegations regarding any official policy that

---

[50] Rec. Doc. No. 18, p. 4.
[51] Rec. Doc. No. 25, p. 3, quoting *Iqbal*, 556 U.S. at 678-79.
[52] *Id.*
41458

would subject Sheriff Ard to Section 1983 liability. Plaintiff's *Complaints* are rife with conclusory allegations and legal conclusions but void of factual allegations regarding specific policies or patterns of conduct. Sheriff Ard's reliance on the decision in *Norton v. Livingston Parish Detention Center*[53] is well placed. The court in *Norton* was faced with very similar allegations to those made in this case, and the court held that "Plaintiffs are merely making conclusory allegations that effectively amount to a formulaic recitation of the elements of their 42 U.S.C. § 1983 cause of action."[54] The same statement applies here.

In this case, the official capacity allegations against Sheriff Ard lack the underlying factual support for the claim that his conduct related to any official policy or custom causing the injuries alleged. Plaintiff's factually supported allegations reference only the conduct of Sgt. Childers. The allegations in Plaintiff's *Complaints* fail to identify or describe with any specificity or factual support any "policy statement, ordinance, regulation, or decision that [was] officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policy-making authority."[55] Plaintiff is required to allege facts, not simply insert the word "repeatedly" to establish a pattern of conduct that would justify a claim of municipal liability. With respect to inadequate supervision and training, Plaintiffs have failed to allege with any specificity how a particular training program was defective and in widespread fashion. Likewise, Plaintiff's pleadings fail to plead facts which would support a claim of deliberate indifference. Indeed, as urged by Sheriff Ard, *Iqbal* forecloses a

---

[53] No. 13-437-JJB-SCR, 2013 WL 5519400 (M.D. La. Oct. 2, 2013).
[54] *Id.* at *5.
[55] *See Bennett*, 735 F.2d at 862.

41458

plaintiff's opportunity to cure such deficiencies through discovery. At this time, Plaintiff has twice amended his *Complaint*, and the Court finds that any further leave to amend on these claims would be futile.

Accordingly, the official capacity claims brought against Sheriff Ard under Section 1983 are dismissed with prejudice.

### 2. Individual Capacity Claims against Sgt. Childers

Sgt. Childers moves to dismiss the individual capacity claims brought against him and asserts the defense of qualified immunity.

#### a. *Qualified Immunity*

In *Harlow v. Fitzgerald*, the United States Supreme Court established the principle that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[56] "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."[57]

A claim of qualified immunity requires the Court to engage in the well-established two-step analysis developed by the Supreme Court in *Saucier v. Katz*.[58] As stated by the Fifth Circuit in the context of a motion for summary judgment:

> First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights. If not, our analysis ends. If so, we next consider

---

[56] 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

[57] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*)).

[58] 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). *See Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).

41458

whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.[59]

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness'."[60]   The plaintiff must support his claim with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."[61]   When greater detail is required to address the defense of qualified immunity, the Court may insist that a plaintiff file a reply pursuant to Federal Rule of Civil Procedure 7(a) tailored to an answer pleading the defense of qualified immunity.[62] "The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."[63]

b.   *Inadequate Medical Care/Concealment of Whereabouts*

Plaintiff makes the vague assertion that his rights were violated when Sgt. Childers transported him to the hospital via his patrol unit rather than by ambulance.  To the extent Plaintiff is claiming that he was given inadequate medical care, Plaintiff's allegations fail to state a claim as pled.  Particularly fatal, Plaintiff fails to plead that Sgt. Childers acted with subjective knowledge of a substantial risk of serious medical harm followed by a

---

[59] *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007)(internal citations omitted).
[60] *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)).
[61] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir.1995) (*en banc*).
[62] *Id.* at 1433–34.
[63] *Id.*
41458

response of deliberate indifference.

The due process clause of the Fourteenth Amendment provides pretrial detainees with a constitutional right to medical care.[64] To state a claim under Section 1983 for denial of medical treatment, a pretrial detainee must "show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted."[65] If deliberate indifference arises from an episodic act, the detainee must prove that "(1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur."[66] "Deliberate indifference is an extremely high standard to meet."[67] "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not[,] is insufficient to show deliberate indifference."[68]

Plaintiff's original *Complaint* and two subsequent amendments fail to allege **facts** to establish an inadequate medical care claim. Simply stating that he was transported to the hospital by squad car rather than ambulance is insufficient to establish that Sgt. Childers had actual knowledge and conscious disregard of a serious medical need of the Plaintiff. This claim is dismissed with prejudice.

Further, Defendants challenge Plaintiff's claim that his constitutional rights were violated by the concealment of his whereabouts from his family during his hospitalization. Defendants aver, and the Court agrees, that Plaintiff has failed to demonstrate that such

---

[64] *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000).
[65] *Id.* (internal citation omitted).
[66] *Thompson v. Upshur Cnty.*, 245 F.3d 447, 458–59 (5th Cir. 2001).
[67] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)(internal citations & quotations omitted).
[68] *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citations omitted).
41458

an action, if taken, constitutes a constitutional deprivation. Further, Plaintiff fails to address or even mention this claim in his *Opposition* memoranda.[69] This claim is dismissed with prejudice as it fails to state a claim under Section 1983.

### c. *Excessive Force*

Plaintiff alleges that Sgt. Childers allowed the dog to viciously attack him for an unreasonable and excessive amount of time, approximately five to seven minutes, before attempting to stifle the dog. Plaintiff further avers that the dog continued to attack him even after Sgt. Childers gave the dog commands to cease. Defendants claim that Plaintiff's allegations are mere legal conclusions and should not be presumed true for purposes of this motion. Defendants further claim that Plaintiff has failed to allege any facts that would overcome the objective reasonableness of Sgt. Childers' actions in this incident such that the defense of qualified immunity is defeated.

It is unclear to the Court whether Plaintiff alleges that simply releasing the dog at all in executing the traffic stop violated his rights or only that the allegedly prolonged attack following Plaintiff's alleged surrender is the violation. In either instance, the Court finds guidance from the decision of the district court for the Northern District of Texas in *Escobar v. Montee*.[70] In *Escobar*, the plaintiff brought suit against the police department and a canine officer alleging that the officer violated his rights when he dispatched his police dog without notice while the plaintiff was on the ground in a position of surrender.[71] The canine officer moved to dismiss the plaintiff's claims and asserted the defense of

---

[69] Rec. Doc. Nos. 18 & 40.
[70] No. 3:15-CV-1962-D, 2016 WL 397087 (N.D. Tex. Feb. 2, 2016).
[71] *Id.*
41458

qualified immunity.[72]

The *Escobar* plaintiff opposed the assertion of qualified immunity:

> Escobar contends that there is no suggestion that he was resisting arrest; he argues that, by allowing Bullet to bite and hold him twice, even though it was evident that he was unarmed and surrendering, Officer Montee acted unreasonably; and he posits that several different cases hold that different components of Officer Montee's conduct do not "withstand scrutiny," because it is unconstitutionally unreasonable to release a police dog without a warning, it is constitutionally unreasonable to "sic" a dog on a surrendering individual by throwing the dog over a fence, and it is constitutionally unreasonable to "sic" a dog on an individual repeatedly while the individual is in custody.[73]

The court noted the proper standard to be applied in this case:

> "The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against citizens." "'To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'"[74]

The court also noted that there was no dispute that the plaintiff had suffered an injury but stated that "[t]he relevant question in this case is whether the force was 'clearly excessive' or 'clearly unreasonable.'" The court opined as follows:

> In assessing the reasonableness of the use of force, the court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[75] "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[76] This is an objective standard: "the question is whether

---

[72] *Id.* at *3.
[73] *Id.* at *5 (internal citation omitted).
[74] *Id.* (internal citations omitted).
[75] *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).
[76] *Id.* (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted)).

41458

the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."[77] "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[78]

The plaintiff argued that the initial release of the dog by the officer was objectively unreasonable because, as soon as he heard the police dog, he dropped is knife and dropped to the ground in the fetal position.[79] Thus, the plaintiff maintained that he was already in a position of surrender when the dog was released. The court held that the plaintiff failed to assert sufficient facts to show that the officer had used excessive and unreasonable force by initially releasing the dog over the fence to bite and hold the plaintiff.[80] The court found the officer's initial release of the dog objectively reasonable because the plaintiff had admitted fleeing and hiding from law enforcement following a domestic altercation with his wife. The court noted other courts that have held under similar circumstances that the release of a police dog to apprehend a fleeing or hiding suspect is not objectively unreasonable.[81] The court also rejected the plaintiff's

---

[77] *Id.* (quoting *Graham*, 490 U.S. at 397).

[78] *Id.* (quoting *Graham*, 490 U.S. at 396-97).

[79] *Id.*

[80] *Id.*

[81] *Id.* at *5 (citing *e.g.*, *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1317 (10th Cir. 2009) (holding that release of police dog did not constitute unconstitutional excessive force where suspect threatened his wife and fled their home, and officers knew he was armed and hiding in a residential neighborhood in the middle of the night); *Tilson v. City of Elkhart, Ind.*, 96 Fed. Appx. 413, 416-17 (7th Cir. 2004) (unpublished) (holding that release of police dog to bite and hold fleeing suspect did not constitute excessive force, and noting "[officer]'s use of a K-9 to bite and hold [suspect] until [officer] could apprehend him is not an unconstitutional (or unreasonable) seizure per se."); *Jarrett v. Town of Yarmouth*, 331 F.3d 140, 149 (1st Cir. 2003) (holding that release of police dog to bite and hold suspect was not unreasonable where suspect had attempted to evade arrest by flight, and officer could reasonably conclude he posed threat to safety of residents in neighborhood because officer "could not discern whether [suspect] was armed given the limited visibility, or predict the lengths to which [suspect] would go to avoid arrest."); *Alicea v. Thomas*, 2015 WL 143987, at *1, 7 (N.D. Ind. Jan. 12, 2015) (holding that releasing canine over five-foot-high pool wall to bite and hold hiding suspect who had burglarized home and fled on foot was not objectively unreasonable), *appeal* 41458

contention that his position of surrender obviated the need to release the dog, stating that "the mere fact that [plaintiff] was lying on the ground is an insufficient allegation of 'surrender.'"[82]  Emphasizing that "[t]he issue of reasonableness of particular use of force must be examined from the perspective of the facts known to the officer at the time of the incident,"[83] the court further stated that the plaintiff "does not contend that Officer Montee knew either of these facts before he decided to release Bullet.  In other words, although Officer Montee knew that Escobar was lying on the ground, Escobar does not allege that Officer Montee would have had any reason to know, prior to releasing Bullet, that Escobar was 'was already surrendering,' as he contends."[84]

In the present matter, for the same reasons set forth in *Escobar*, to the extent Plaintiff challenges as objectively unreasonable the initial release of the dog to effectuate the traffic stop, the Court finds that Sgt. Childers' release of the dog was objectively reasonable in light of the Plaintiff's admission that he purposely failed to comply with the traffic stop until he arrived in an area he believed to be "safer."[85]  While the Court acknowledges that the situation in *Escobar* was potentially more dangerous, it is not unreasonable that Sgt. Childers may have interpreted Plaintiff's failure to pull over as an attempt to flee.  Further, while Plaintiff contends he exited the vehicle in a position of surrender, the fact that he refused to stop for approximately seven minutes[86] may have

---

*docketed*, No. 15-1255 (7th Cir. Feb. 10, 2015); *Baker v. Cohen*, 2010 WL 3385266, at *12 (S.D. Fla. Aug. 5, 2010) (holding that release of police dog to bite, seize, hold, and remove suspect from vehicle where he was found hiding after fleeing from police did not violate suspect's Fourth Amendment rights where suspect had fled scene of initial traffic stop, engaged in highspeed chase ending in crash, and continued flight on foot, and police officer could not see suspect's hands and did not know whether he was armed)).
[82] *Id.* at *5.
[83] *Id.* (quoting *Rockwell*, 664 F.3d at 991).
[84] *Id.* (citing
[85] *See* Rec. Doc. No. 1, ¶ 13.
[86] *See* Rec. Doc. No. 18, p. 2.
41458

caused Sgt. Childers to question Plaintiff's state of mind, whether he would further attempt to evade arrest, or whether he possessed a weapon. Considering these facts, Sgt. Childers was not unreasonable in releasing the dog at the inception of the traffic stop.

Turning to Plaintiff's claim that Sgt. Childers use excessive force against him by allowing the dog to continuously attack Plaintiff for an excessive and unreasonable amount of time, the Court cannot conclude on a Rule 12(b)(6) motion that this claim should be dismissed. The Fifth Circuit has clearly held that, "once an arrestee stops resisting, the degree of force an officer can employ is reduced.[87] '[A]lthough the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, the permissible degree of force depends on [the *Graham* factors].'"[88]

In *Cooper v. Brown*,[89] the Fifth Circuit affirmed the district court's denial of qualified immunity to a police officer alleged to have allowed a police canine to attack a suspect following the suspect's surrender. The court noted that the officer "subjected [the plaintiff] to a lengthy dog attack that inflicted serious injuries, even though he had no reason to believe that [the plaintiff] posed a threat, and without first attempting to negotiate."[90] Even the officer's expert had conceded that there was no reason for the officer to permit the dog to continue attacking once the suspect was on his stomach.[91]

The Fifth Circuit discussed the Eleventh Circuit's decision in *Priester v. City of*

---

[87] *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016).
[88] *Id.* (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (internal quotation marks omitted)).
[89] *Id.*
[90] *Id.* at 523.
[91] *Id.*

41458

*Rivera Beach*,[92] a case with similar facts. The *Cooper* court discussed the reasoning and analysis in *Priester*:

> [T]he Eleventh Circuit held that it was objectively unreasonable for officers to allow a dog to bite and hold a suspect for two minutes—which it described as "an eternity"—where he was compliant with orders and not resisting arrest. The Eleventh Circuit confronted the question a second time in *Edwards v. Shanley*, 666 F.3d 1289 (11th Cir. 2012). There, a man was pulled over for a traffic violation and fled on foot. When the officers encountered him, he was lying on his stomach with his hands exposed. The man verbally surrendered, shouting, "[Y]ou got me. I only ran because of my license." Nonetheless, the officers released their dog and permitted it to continue biting him for five to seven minutes. *Id.* at 1292–93. The court held that the officers' conduct violated the constitution.[93]

The *Esobar* case discussed above is also instructive on this point. Applying the *Graham* factors, the *Escobar* court held:

> [V]iewed favorably to Escobar and accepted as true, the well-pleaded allegations in the complaint show that Officer Montee used excessive force by allowing Bullet to continue biting and holding Escobar after it became apparent to Officer Montee that Escobar was no longer armed and was not resisting arrest. … These facts, if true, show that, at some point during the attack by Bullet, Escobar no longer posed an immediate threat to the safety of the officers and others. These same facts show that although Escobar had initially fled from the officers who came to his residence, he was no longer "actively resisting arrest or attempting to evade arrest by flight." The court concludes that allowing Bullet to hold Escobar by biting his calf for up to 60 seconds was excessive under the circumstances.[94]

Turning to the present case, accepting the well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, the Court finds that dismissal of Plaintiff's excessive force claim is not proper. Plaintiff alleges that, "[u]nder SGT CHILDERS direction, the K9 Apache viciously attacked Plaintiff BRENT LEE …for an unnecessary

---

[92] 208 F.3d 919, 923-24 (11th Cir. 2000).
[93] *Cooper*, 844 F.3d at 525.
[94] *Escobar*, 2016 WL 397087 at *9 (internal citations omitted).
41458

and excessive amount of time before attempting to stifle the animal."[95]   Plaintiff further

alleges that the dog "continued to attack Plaintiff even after being ordered to cease by

SGT CHILDERS."[96]

Defendants claim Plaintiff's amendment has removed any allegation of intentional

action on the part of Sgt. Childers, and he now alleges only negligence which is not

actionable under Section 1983.  The Court does not read the allegations in such a limited

fashion. Because Plaintiff pled negligence in the alternative to an intentional act does not

negate the allegation of an intentional act.   Defendants are correct, however, that, to the

extent Plaintiff alleges a claim of negligence against Sgt. Childers under Section 1983,

such claim must fail as a matter of law.  The Supreme Court has held that negligence,

even gross negligence, does not implicate the Constitution and does not provide a basis

for a Section 1983 claim.[97]   Nevertheless, the Court finds that Plaintiff has stated a claim

under Section 1983 for the allegedly intentional continuous attack allowed by Sgt.

Childers after Plaintiff was in a position of surrender.   The amount of time between the

release of the dog and the allegedly ignored commands to cease is a fact issue that is

properly pled and not appropriate for disposition on a motion to dismiss.

---

[95] Rec. Doc. No. 1, ¶ 15.

[96] *Id.*, ¶ 16.

[97] *Sheppard v. Hawkins*, No. 2012 WL 6020037 at * 2 (W.D. La. Nov. 9, 2012)(citing *Farmer v. Brennan*, 511 U.S. 825, 114 S .Ct.1970, 1978, 128 L.Ed.2d 811, 823 (1994)("deliberate indifference entails something more than mere negligence ..."); *See also Ruffin v. Landry*, 2011 WL 1752084, *2 (W.D.La. 2011) (noting "courts have, in a number of contexts, determined that allegations amounting to negligence cannot support a § 1983 claim.")(citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993) (negligent medical care), *Hare v. City of Corinth*, 74 F.3d 633, 641–42, 646 (5th Cir.1996) (negligence insufficient to support failure to protect claim under § 1983), *Eason v. Thaler*, 73 F.3d 1322, 1328–29 (5th Cir.1996) (gross negligence by prison officials in preventing a gas leak insufficient to support § 1983 action under the Eighth Amendment) and *Doe v. Taylor Indep. Sch. Dist.*, 975 F.2d 137, 142 (5th Cir.1992), *vacated on other grounds*, 15 F.3d 443 (5th Cir.1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.")).

41458

### C. State Law Claims[98]

Defendants have also moved to dismiss all state law claims asserted by Plaintiff. Plaintiff brings the following state law claims against Sgt. Childers: negligent injuring, assault and battery, and intentional infliction of emotional distress ("IIED"). Plaintiff asserts the following state law claims against Sheriff Ard: negligent training and supervision and vicarious liability for the actions/conduct of Sgt. Childers.

Defendants argue that all of Plaintiff's state law claims hinge on the reasonableness of Sgt. Childers' actions. Defendants maintain that Plaintiff has failed to plead sufficient factual support to establish the unreasonableness of Sgt. Childers' conduct. Having found that Plaintiff has properly pled the unreasonableness of Sgt. Childers' failure to intervene and stop the canine attack after Plaintiff's surrender, the Court must also deny Defendants' motion to dismiss the state law claims at this stage of the litigation. While the Court acknowledges that Plaintiff's state law claims, particularly IIED, carry a high burden of proof, that issue is not before the Court on a Rule 12(b)(6) motion.

Sheriff Ard moves to dismiss Plaintiff's state law claims asserting the immunity provided to public entities for policymaking or discretionary acts by Louisiana law

---

[98] The Court exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

41458

pursuant to La. Rev. Stat. § 9:2798.1.[99]  In *Bouchereau v. Gautreaux*,[100] the court held that discretionary function immunity was not available to a sheriff as an affirmative defense at the motion to dismiss stage.  The same reasoning and analysis employed in *Bouchereau* is applicable here as this is a fact-intensive question.

    Accordingly, Defendants' *Motion to Dismiss* Plaintiff's state law claims is DENIED.

---

[99] A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
        (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
        (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
[100] No. 14-805-JWD-SCR, 2015 WL 5321285 at *15 (M.D. La. Sep. 11, 2015).
41458

### III. CONCLUSION

For the reasons set forth above, the *Motion to Dismiss*[101] by Defendants is GRANTED in part and DENIED in part as set forth above.  All official capacity claims against Sheriff Ard are dismissed with prejudice.  All official capacity claims against Sgt. Childers are dismissed with prejudice.  To the extent Plaintiff asserts a Section 1983 claim against Sgt. Childers in his individual capacity for releasing the canine, that claim is dismissed with prejudice.  All other claims remain before the Court.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>November 13, 2017</u>.


_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[101] Rec. Doc. No. 15.

41458