# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

BRENT MIRONELLE LEE, INDIVIDUALLY
AND ON BEHALF OF HIS MINOR CHILDREN       CIVIL ACTION NO.
BRE'UNISTY LEE AND JAMAL LEE

VERSUS                                    17-23-SDD-EWD

SHERIFF JASON ARD, IN HIS OFFICIAL
CAPACITY AS SHERIFF OF LIVINGSTON
PARISH, SERGEANT CARLCHILDERS, AND
CONTINENTAL CASUALTY COMPANY

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendants, Sheriff Jason Ard, Sheriff of Livingston Parish ("Sheriff Ard") and Sergeant Carl Childers ("Sgt. Childers")(or collectively "Defendants"). Plaintiff, Brent Lee ("Plaintiff"), has filed an *Opposition*[2] to this motion, to which Defendants filed a *Reply*,[3] Plaintiff filed a *Sur-Reply*,[4] and Defendants filed a *Sur-Sur-Reply*.[5] For the following reasons, the Court finds that Defendants' motion should be granted.

**I.   FACTUAL BACKGROUND**

Plaintiff alleges that, on or about January 11, 2016, he was traveling on Florida Boulevard in Denham Springs, Louisiana, when he allegedly changed lanes without using

---

[1] Rec. Doc. No. 73.
[2] Rec. Doc. No. 82.
[3] Rec. Doc. No. 88.
[4] Rec. Doc. No. 93.
[5] Rec. Doc. No. 96.
51114

a turn signal. For this alleged traffic violation, Sgt. Childers and other responding officers attempted to initiate a traffic stop. Plaintiff contends that he did not immediately pull over because of his prior experiences with Livingston Parish Police officers which "led him to be extremely fearful" of what the officers might to do him if he stayed in the area.[6] Thus, Plaintiff contends he continued driving for approximately seven minutes until he reached a neighborhood in which he felt safer.[7]

Upon entering the neighborhood, Plaintiff stopped and exited his vehicle. Plaintiff claims that Sgt. Childers deployed a K9 Apache dog ("the dog") to assist in making the arrest. Plaintiff contends witness accounts establish that the dog viciously attacked him for between five and seven minutes after he had surrendered to police. Plaintiff further claims that, during this alleged attack, he was pleading with officers for relief as the dog was "chewing at his flesh."[8] Plaintiff alleges that Sgt. Childers allowed the dog to attack Plaintiff for an unnecessary and excessive amount of time. Further, Plaintiff alleges that the dog continued to attack him even after Sgt. Childers ordered the dog to cease. As a result of this attack, Plaintiff alleges he has suffered severe physical injuries and the loss of quality and enjoyment of life.

Plaintiff filed this lawsuit asserting various federal claims under 28 U.S.C. § 1983 and state law. Defendants filed a *Motion to Dismiss*, and the Court dismissed all official capacity federal claims brought against Sheriff Ard and Sgt. Childers with prejudice, dismissed the Section 1983 individual capacity claim against Sgt. Childers for the initial

---

[6] Rec. Doc. No. 1, ¶ 12.
[7] *Id.*, ¶ 13.
[8] Rec. Doc. No. 18, p. 2.
51114

release of the canine, and held that all other claims remained before the Court.[9] Shortly after this *Ruling*, Plaintiff submitted a *Status Report* wherein he advised that he had pled guilty to all three criminal charges brought against him – aggravated flight from an officer, resisting an officer with force or violence, and relative to possession with intent to distribute marijuana - on August 28, 2017.[10]

Defendants filed the instant *Motion for Summary Judgment* arguing that, as a result of Plaintiff's guilty pleas, his civil claims are foreclosed by *Heck v. Humphrey*.[11] Plaintiff opposes this motion and maintains that his underlying guilty plea for resisting an officer is not undermined by his claim that his constitutional rights were violated when Sgt. Childers allegedly allowed the canine to continue to attack him after he was subdued.

## II.  LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[13] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[14] If the moving party satisfies its burden, "the non-moving party must show that

---

[9] Rec. Doc. No. 44.
[10] Rec. Doc. No. 46.
[11] 512 U.S. 477 (1994).
[12] Fed. R. Civ. P. 56(a).
[13] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[14] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).

51114

summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[15] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[16]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[17] All reasonable factual inferences are drawn in favor of the nonmoving party.[18] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[19] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[20]

### B. *Heck v. Humphrey*

It is well-settled that a Section 1983 claim for damages cannot directly attack the constitutionality of a conviction, imprisonment, or other harm caused by unlawful actions unless that conviction or sentence has been "reversed on direct appeal, expunged by

---

[15] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[16] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[17] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[18] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[19] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[20] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
51114

executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus."[21] This burden placed on Section 1983 plaintiffs is for the purpose of avoiding collateral attacks by plaintiffs on convictions that are "still outstanding."[22] In the absence of this circumstance, "the maturity of a § 1983 claim depends on 'whether a judgment in favor of the [p]laintiff ... would necessarily imply the invalidity of [the plaintiff's] conviction.'"[23] However, the alleged constitutional violation should not be barred "if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim."[24] Thus, "if the district court determines that [the plaintiff's] action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against [the plaintiff], the action should be allowed to proceed ... ."[25]

The Fifth Circuit has explained that "a plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction."[26] This is because "factual assertions in pleadings are ... judicial admissions conclusively binding on the party that made them."[27] Accordingly, "when a plaintiff contends that he did not resist arrest, that is, that he committed no offense and was instead unjustly victimized,

---

[21] *See Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir.1996) (quoting *Heck*, 512 U.S. at 487) (internal quotations omitted).
[22] *See id.* (quoting *Heck*, 512 U.S. at 487) (internal quotations omitted).
[23] *See id.* (quoting *Heck*, 512 U.S. at 487).
[24] *See Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008); *see also, e.g., Ballard v. Barton*, 444 F.3d 391, 401 (5th Cir. 2006) (holding that the excessive force claim against an officer other than the one the plaintiff was convicted of assaulting was "conceptually distinct," and therefore, the two could "easily coexist").
[25] *Heck*, 512 U.S. at 487.
[26] *Bush*, 513 F.3d at 498 n. 14.
[27] *Daigre v. City of Waveland, Miss.*, 549 Fed.Appx. 283, 286 (5th Cir. 2013) (quoting *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (alterations and citation omitted)).
51114

the Fifth Circuit has uniformly concluded that his excessive force claim is *Heck* barred because the excessive force claim necessarily attacks the validity of the conviction for resisting arrest."[28] "Moreover, when there is no temporal and conceptual distinction between the factual basis for the conviction and the excessive force claim, that is, when the complained of use of force is applied during or simultaneously with the arrest, *Heck* applies."[29] In these cases, the "[p]laintiff's claims are dismissed with prejudice to their being asserted again until the *Heck* conditions are met."[30]

### C. Application

Plaintiff likens his claims to those in *Bush v. Strain*.[31] In *Bush v. Strain*, it was undisputed that the defendant detective was interviewing a witness when the plaintiff walked up and greeted him. When the plaintiff overheard the witness comment about plaintiff's sister, the plaintiff became enraged and threw a cup of ice water at the witness. The defendant detective attempted to arrest the plaintiff for simple battery, and when the plaintiff was partially handcuffed she pulled her right arm away in an apparent attempt to hit or intimidate the witness.[32] Stories diverged as to what happened next. The defendant detective testified that the plaintiff continued to resist arrest while he attempted to cuff her

---

[28] *Price v. City of Rayne*, No. 13-0790, 2016 WL 866945 at *3 (W.D. La. Mar. 3, 2016)(citing *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656–57 (5th Cir. 2007); *Daigre*, 549 Fed.Appx. at 287; *Walker v. Munsell*, 281 Fed.Appx. 388, 390 (5th Cir. 2008); *Arnold v. Town of Slaughter*, 100 Fed.Appx. 321, 324 (5th Cir. 2004)).

[29] *Id.* (citing *Walter v. Horseshoe Entertainment*, 483 Fed.Appx. 884, 887 (5th Cir. 2012); *Bush*, 513 F.3d at 495, 498 (use of force after arrest and handcuffing when resistance by the arrestee had ceased was temporally and conceptually distinct from the criminal conviction); *DeLeon*, 488 F.3d at 656-657 (finding that the complaint did not allege that the claims of excessive force were separable from the plaintiff's aggravated assault on the officer); *Pratt v. Giroir*, 2008 WL 975052, at *5 (E.D. La. Apr. 8, 2008) ("Fifth Circuit precedent is clear that whether the plaintiff alleges excessive force during or simultaneous with an arrest versus after an arrest results in distinct consequences under *Heck*.").

[30] *DeLeon*, 488 F.3d at 657 (quoting *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996)).

[31] 513 F.3d 492 (5th Cir. 2008).

[32] *Id.* at 496.

51114

right hand. As they struggled, they both fell on the rear window of a car. In contradiction to the testimony of defendant detective, the plaintiff admitted that she pulled away when defendant detective attempted to arrest her, but she stated that she stopped resisting after he grabbed her right hand. She contended that after she ceased all resistance and both hands were cuffed, defendant detective placed his hand behind her neck and head and forced her face into the rear window of car injuring her jaw and breaking two of her teeth.[33]

The Fifth Circuit determined that the plaintiff stated a claim for excessive force after she was restrained.[34] The court concluded that, because the plaintiff produced evidence that the alleged excessive force occurred after she stopped resisting arrest, the fact findings essential to her criminal conviction were not inherently at odds with this claim, and a favorable verdict on her excessive force claim would not undermine her criminal conviction for resisting arrest.[35]

In contrast, in *Daigre v. City of Waveland, Miss.*, officers responded to a domestic disturbance call and arrested Daigre after she refused the officers' commands to get out of bed.[36] As officers approached Daigre in the bed with tasers drawn, Daigre screamed obscenities and refused. When the officers attempted to physically pull Daigre from the bed, she pulled back against them, "using her body as leverage, initiating a kind of tug-of-war."[37] When officers pulled back again, Daigre was slammed into the wall and also

---

[33] *Id.*
[34] *Id.* at 499.
[35] *Id.* at 500.
[36] 549 Fed. Appx. 283, 284 (5th Cir. 2013).
[37] *Id.* at 285.

deployed the taser.[38] Daigre was arrested and charged with resisting arrest and simple assault on a police officer, and she ultimately pled guilty to resisting arrest.[39] Daigre sued the officers under Section 1985 alleging excessive force. The Fifth Circuit held that "Daigre's excessive-force claim is barred because she 'still thinks [she is] innocent.'[40] Unlike the allegations in *Bush*, Daigre's broad claims of innocence relate to the entire arrest encounter, and not merely a discrete part of it.[41] The result is dismissal under *Heck*."[42]

Defendants maintains that it is a bright-line rule in the Fifth Circuit that, when a plaintiff pleads guilty to a charge of resisting an officer but alleges and/or testified in a later civil suit that he did not resist arrest, his claims necessarily imply an invalidity of the plea/conviction and are barred by *Heck*. Indeed, Plaintiff testified in his deposition that, at no time during the encounter did he use any kind of physical force against any of the police officers.[43] Further, in the *Status Report* submitted by Plaintiff regarding the resolution of the criminal charges brought against him, counsel states that Plaintiff "immediately submitted to the officers" upon his exit from his vehicle.[44] In Plaintiff's *First Amended Complaint*, Plaintiff alleges that Sgt. Childers and other officers "attempted to

---

[38] *Id.*
[39] *Id.*
[40] *Id.* at 287 (quoting *DeLeon*, 488 F.3d at 657).
[41] *See Bush*, 513 F.3d at 499.
[42] *See DeLeon*, 488 F.3d at 657; see also *Whatley v. Coffin*, 496 Fed.Appx. 414, 417 (5th Cir. 2012) (per curiam) (unpublished) ("We need not determine whether [plaintiff's] excessive force claims undermine an element of his assault of a public servant convictions because the facts alleged in his complaint were inherently inconsistent with those convictions."); *Arnold v. Town of Slaughter*, 100 Fed.Appx. 321, 324 (5th Cir.2004) (per curiam) (unpublished) (claims barred where plaintiff "claim[ed] that he did nothing wrong, but was viciously attacked for no reason").
[43] Rec. Doc. No. 73-4 at 2 (Deposition of Plaintiff, p. 39).
[44] Rec. Doc. No. 46 at 1.
51114

initiate a traffic stop,"⁴⁵ and "[w]hen this attempt was unsuccessful,"⁴⁶ the K9 was deployed "to assist with the arrest."⁴⁷ While Plaintiff claims that the K9 was allowed to attack for "an unnecessary and excessive amount of time … even after being ordered to cease by the attending officers," Plaintiff's allegations do not address his own resistance and ostensibly imply that he was not resistant. Plaintiff's allegations cannot be transformed by arguments of counsel in a brief.

Further, although Plaintiff appears to admit to some resistance on his part during the encounter in his late-filed *Statement of Undisputed Material Facts*,⁴⁸ Plaintiff cites to no record or summary judgment evidence in support of these alleged factual statements. Plaintiff states:

> 5. Despite the fact that Plaintiff pled guilty to Resisting an Officer pursuant to of La. R.S. §14:108.2, a genuine issue of material fact still exists as to the **duration of Plaintiff's resistance**;⁴⁹
> 6. Despite the fact that Plaintiff pled guilty to Resisting an Officer pursuant to of La. R.S. §14:108.2, a genuine issue of material fact still exists as to whether or not Sergeant Childers allowed the police canine under his control attack Plaintiff **after Plaintiff had ceased resistance and surrendered** to Sergeant Childers' authority;⁵⁰

These statements constitute argument and are not supported by record evidence. Indeed, Plaintiff's complaint is void of allegations regarding his purported resistance, and as set forth above, Plaintiff's deposition testimony contradicts these statements. At the summary judgment stage, when the party moving for summary judgment meets its burden

---

⁴⁵ Rec. Doc. No. 61, ¶ 11.
⁴⁶ *Id.* at ¶ 12.
⁴⁷ *Id.*
⁴⁸ Rec. Doc. No. 82-1. The Court refers to this document as untimely because Plaintiff failed to include a statement of facts with the opposition originally submitted. Plaintiff's original opposition was stricken for a Local Rule 7(g) deficiency (Rec. Doc. No. 79), and only upon leave to substitute his opposition did Plaintiff attach a statement of facts.
⁴⁹ *Id.* at ¶ 5 (emphasis added).
⁵⁰ *Id.* at ¶ 6 (emphasis added).
51114

by showing the Court that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[51] To satisfy this burden,

> the non-moving party may not rest upon mere allegations or denials in his pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." A party seeking to establish that a fact is genuinely disputed **must support such an assertion by reference to "materials in the record, including depositions, documents ... affidavits or declarations ... admissions, interrogatory answers, or other materials**." The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[52]

Plaintiff's *Statement of Undisputed Material Facts* cites to no record evidence whatsoever in support of his assertions. Further, Plaintiff has failed to controvert the facts contained in Defendants' *Statement of Uncontested Facts* with supporting evidence as required by Local Rule 56(b).

Plaintiff contends he has been unable to gather evidence due to the stay of discovery, to which he agreed, during the pendency of this motion. However, Plaintiff has failed to demonstrate, as required by Rule 54(d), how the deposition testimony of Sgt. Childers or other witnesses will create a material issue of fact regarding the subject of the present motion – whether Plaintiff maintains his innocence for charges to which he pled

---

[51] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).
[52] *DeCossas v. St. Tammany Parish School Board*, No. 16-3786, 2017 WL 3971248 at *10 (E.D. La. Sep. 8, 2017)(internal citations omitted).
51114

guilty. Plaintiff's own deposition testimony and pleadings filed into the record of this matter undermine the statements set forth above. Plaintiff has failed to demonstrate how the testimony of any other witnesses will serve to correct this inconsistency for purpose of the application of *Heck v. Humphrey* to his claims; the same is true for the *Affidavit* of Lennon Rushing submitted by Plaintiff.[53]

The Court finds the reasoning and analysis in *Claunch v. Williams*[54] applicable to the present case. In *Claunch*, the plaintiff alleged that he was transported from a bar to his home in Slidell, Louisiana and charged $17.10 instead of the allegedly correct cab fare of $8.00. The plaintiff also claimed that, when he failed to tender the fare charged, he was locked in the cab by the driver, who called the St. Tammany Sheriff's Office, and the defendant officers responded. According to the complaint, the plaintiff claimed that, when the officers ordered him to retrieve the additional fare from his house, we was struck from behind by one of the officers, handcuffed, tased, put into the sheriff's vehicle, transported a gas station where he was again beaten and tased before being taken to and detained at the St. Tammany Parish jail for 2–3 days without being allowed to use the phone to contact an attorney or family.[55] The plaintiff brought a variety of federal and state claims against the defendants, including excessive force, assault and battery, and unlawful detention.[56]

The uncontroverted police record indicated that the plaintiff was intoxicated and arrested for disturbing the peace and resisting arrest at his home, and the plaintiff

---

[53] Rec. Doc. No. 89-3.
[54] No. 10-1716, 2012 WL 366544 (M.D. La. Jan. 30, 2012).
[55] *Id.* at *1.
[56] *Id.*
51114

continued to act violently in the sheriff's vehicle during transport. The plaintiff was charged with two misdemeanor counts for disturbing the peace and resisting an officer and two felony counts for resisting an officer with force or violence and public intimidation. He was also charged in a bill of information with resisting an officer "by the intentional interference, obstruction or resistance to a law enforcement officer acting in his official capacity and authorized by law to make a lawful arrest knowing or having reason to know that the officer was acting in his official capacity" in violation of La.Rev.Stat. § 14:108 and for disturbing the peace in a manner "as would foreseeably disturb or alarm the public by being intoxicated" in violation of La.Rev.Stat. 103. Approximately one month prior to filing this suit, the plaintiff entered a plea of "no contest" to the charges contained in the bill of information and was sentenced.[57]

The defendants moved for summary judgment on the plaintiff's claims arguing the Section 1983 claims were barred by *Heck*. The defendants presented the plaintiff's deposition testimony in support of their motion:

> Claunch testified that he was "visibly intoxicated" at the bar on the night of the arrest, that he did nothing wrong at his home, that he was handcuffed at his home "for no reason" given the insignificant amount of cab fare owing, that he was not belligerent or hostile or resistant to the officers prior to being hit in the head at his home, that the officers did not tell him he was under arrest at his home and that his resistance did not start until after he was hit, handcuffed and tased, and that he was transported with leg restraints on. Rec. Doc. 60–11. Claunch did not remember kicking the doors or windows of the police car after leaving his home. *Id*. He testified that he exhibited no resistance to the officers' lawful commands at any time prior to being tased in handcuffs and that any resistance was in the nature of self-defense. *Id.* Claunch concluded his deposition by testifying that he did not at any time during his interaction with the officers do anything wrong insofar as resisting abusing or intimidating the officers, other than asking to be released because of his father's position. *Id.* Claunch did not pay the cab fare that

---
[57] *Id.*
51114

night. *Id.*[58]

The court noted that the plaintiff offered no deposition testimony to contradict the defendants' arguments.[59]

The plaintiff argued that his claims were not barred by *Heck* by relying on the distinctions in *Bush*. The court summarized the plaintiff's reasoning:

> Claunch claims that he "plead no contest only to resisting arrest when the Deputies attempted to place him in restraints" and "does not contest that he may have struggled and resisted at the point in time when the deputies actually placed him in handcuffs at his property." Rec. Doc. 69 at 6. He supports his argument that the excessive force occurred before and after he was placed under arrest with an January 2012 affidavit in which he swears that he was not resisting arrest when he was hit over the head at his home, that his resisting arrest conviction only concerns the time when he was placed in restraints at his home because he "was shocked and rattled by the chain of events," and that he was not resisting arrest at the gas station. Rec. Doc. 69–2.2 Again, no deposition excerpts are offered by the plaintiff.[60]

The defendants argued the plaintiff could not impeach his prior sworn testimony with a subsequent conflicting affidavit that failed to explain the inconsistencies. The plaintiff argued in response that his plea of no contest only related to resisting arrest when he was placed in restraints.[61] The court rejected this contention, holding:

> The Court finds this explanation unpersuasive and ill-timed. Claunch's deposition testimony is not so restricted, he testified that he acted in self-defense, and the current time-sensitive explanation of the scope of the crimes for which the plaintiff is convicted are contrary to that deposition testimony and otherwise unsupported by police and court records. It should be noted that the affidavit was signed by Claunch months after the plaintiff's deposition testimony and almost eighteen months after the incident.[62]

---

[58] *Id.* at *2.
[59] *Id.*
[60] *Id.* at *3.
[61] *Id.*
[62] *Id.*
51114

Thus, the court found that the "same facts attend Claunch's convictions as his § 1983 claims for excessive force and unlawful arrest and those claims necessarily imply the invalidity of his convictions for disturbing the peace and resisting arrest. As such, any § 1983 claim for damages relative to excessive force or wrongful arrest are barred by Heck."[63]

Like the plaintiff in *Claunch*, Plaintiff herein failed to offer any contradicting excerpts from his own deposition testimony to establish a distinct excessive force claim for purposes of *Heck*. Further, Plaintiff's deposition testimony demonstrates that Plaintiff appears to still deny that he, in fact, resisted arrest by force or violence, a charge for which he was convicted:

> Q All right. Now, at any time that whole night during this whole incident did you ever use any physical force against any of the police officers or deputies out there?
>
> A No, sir.
>
> Q All right. At any time that whole night during the whole incident did you punch any of the officers or deputies out there?
>
> A No, sir.
>
> Q At any time that whole night during the whole incident did you ever, you know, use an elbow or a knee on any of the officers or deputies?
>
> A No, sir.[64]

While Plaintiff has not attempted to contradict this testimony with an inconsistent, subsequent affidavit, Plaintiff has simply ignored his testimony altogether and avoided addressing Defendants' arguments regarding same. Thus, because Plaintiff has failed

---

[63] *Id.*
[64] Rec. Doc. No. 73-4 (Deposition of Plaintiff, p. 39:18 through p. 40:5).
51114

to present summary judgment evidence demonstrating a material issue of fact regarding his admission of resistance, the Court finds that his Section 1983 claims and state law claims[65] are barred by *Heck v. Humphrey*.

### III. CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[66] by Defendants is GRANTED. *Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>April 17, 2019</u>.

*Shelly D. Dick*
_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[65] *See Collier v. Roberts*, No. 13-425-SDD-EWD, 2016 WL 3448607 at *6-*7 (M.D. La. June 17, 2016); *Arnold v. Town of Slaughter*, No. 01-902-D, 2003 WL 25739166, *4 (M.D.La., Sep. 5, 2003)(citing *Mayeux v. Lee*, No. CIV. A. 99-1625, 2000 WL 17836, 3 (E.D.La., Jan. 10, 2000); *Williams v. DiVittoria*, 777 F.Supp. 1332, 1337 (E.D.La. 1991)).
[66] Rec. Doc. No. 73.
51114